FILED

2015 Feb-17  PM 12:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **CURTIS ALLEN SANDERS,** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO.** |
| ) | **4:14-CV-00009**-KOB |
| ) | |
| **CAROLYN W. COLVIN** ) | |
| **Acting Commissioner of** ) | |
| **Social Security** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On October 12, 2010, the claimant, Curtis Allen Sanders, applied for supplemental security income under Title II and Title XVI of the Social Security Act. The claimant alleges disability commencing on July 15, 2010 because of back pain and depression. The Commissioner denied the claim initially on December 16, 2010. The claimant filed a timely request for a hearing before an Administrative Law Judge, and the ALJ held a hearing on August 27, 2012.

In a decision dated October 9, 2012, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, was ineligible for supplemental security income. (R. 13)   On November 6, 2013 the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

1

## II. ISSUE PRESENTED

Whether the ALJ properly applied the Eleventh Circuit's three-part pain standard.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legals standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No...presumption of validity attaches to the [Commissioner's] legals conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions,... but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that they would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the

evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11ᵗʰ Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse the finding as long as substantial evidence in the record supports it.

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but also must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

3

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529. In applying the pain standard, for the ALJ to discredit the claimant's subjective complaints of pain without explicitly articulating his reasons for doing so is reversible error. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## V. FACTS

The claimant has a high school diploma and was thirty-three years old at the time of the administrative hearing. (R. 21). His past work experience includes employment as a forklift operator, feed mill helper, and a plumber helper. (R. 20- 21). The claimant originally alleged that he was unable to work because of back pain and depression; however, on appeal, the claimant did not contest the ALJ's findings regarding the impact of his depression on his ability to work. (Doc. 9 at 3).

### *Physical Limitations*

On March 7, 2009, the claimant sustained a laceration to the arm and several broken ribs as a result of a car accident. (R. 222-224). Dr. Katyal Deepak, a physician at Huntsville Hospital, ordered a CT scan of the claimant's spine that revealed a non-displaced fracture to the right transverse process and no fracture to the vertebral bodies. (R. 259).

4

On September 22, 2010, the claimant went to the Emergency Room at Marshall Medical Center North complaining of severe lower back pain. Dr. Lisa Driskill, a treating physician, examined the claimant. A CT scan revealed large broad-based disc bulges at L4/5 and L5/S1, producing narrowing of the spinal canal and pressure on membrane surrounding the spinal chord. Dr. Driskill diagnosed the claimant with degenerative disc disease with radiculopathy. (R. 197-198).

On October 7, 2010,  Dr. J. Culpepper, a treating physician at Northeast Alabama Health Services, examined the claimant. The claimant told Dr. Culpepper that he had back pain that was the result of a car accident a couple of years before in which he broke his back. Dr. Culpepper prescribed the claimant Toradol, Flexeril, and Naproxen and referred the claimant to a pain management clinic. (R. 191).

On October 24, 2010, the claimant returned to the Emergency Room at Marshall Medical Center North with complaints of lower back pain. The physician at the emergency room prescribed the claimant Toradol and Norflex and advised the claimant to see Dr. Youngblood, a physician at Premiere Family Care,  for management of his chronic back pain. (R. 200).

The claimant went to Marshall Medical Center on November 3, 2010, complaining of lower back pain. Dr. R. Hargrave examined the claimant and ordered a CT scan that revealed large disc bulges at the L4/L5 and L5/S1 vertebrae causing narrowing of the spinal canal and pressure on the membrane surrounding the spinal chord and nerve root. Dr. Hargrave prescribed the claimant Lortab, Naproxen, and Flexeril. (R. 205).

In November of 2010, the claimant began seeing a chiropractor, Dr. Tim Sargeant, for his back pain. On November 10, 2010, Dr. Sargeant diagnosed the claimant with lumbar disc

5

displacement and lumbar radiculitis with a secondary diagnosis of sciatic neuralgia. The claimant had fifteen appointments with Dr. Tim Sargeant from November 10, 2010 through December 7, 2010.  The claimant reported varying degrees of pain during that time period. On November 19, 2010, the claimant reported improvement in his back and leg pain. Dr. Sargeant reported a decrease in objective findings. On November 23, 2010, the claimant reported that his back and leg pain were worse and stated that his pain was a nine on a zero out of ten scale. Dr. Sanders noted that the claimant was progressing as expected. On December 3, 2010, the claimant reported an improvement in his back and leg pain. Dr. Sargeant noted a decrease in his objective findings. On December 6, 2010, the claimant stated that his back and leg pain had remained unchanged since his last visit. (R. 268-273).

On December 7, 2010, the claimant returned to the Emergency Room at Huntsville Hospital with complaints of back and leg pain. Dr. Thomas Calvert, the treating physician at the Emergency Room, diagnosed the claimant with sciatica and prescribed him Methylprednisolone and Flexeril. At this visit, the claimant told Dr. Calvert that he had been seeing a chiropractor for the past two months and that the chiropractic treatment provided immediate relief, but that the pain returned immediately after leaving the chiropractor.  (R. 208). However, at his chiropractor appointment on December 8, 2010, the claimant told Dr. Sargeant that his back and leg pain had been better since his last visit on December 6, 2010 and did not make any mention to Dr. Sargeant that he went to the Emergency Room the day before. (R. 273).

On December 16, 2010, Dr. Heilpern, the consulting physician, performed a Physical Residual Functional Capacity Assessment at the request of the Disability Determination Service. Dr. Heilpern based his assessment on the objective medical evidence of record and the claimant's

6

self-report of symptoms and limitations. In his report, Dr. Heilpern diagnosed the claimant with hypertension and degenerative disc disease of the lumbar spine. Dr. Heilpern reported that the claimant could occasionally lift or carry ten pounds; frequently lift or carry less than ten pounds; stand or walk for two hours in an eight hour work day; sit for about six hours in an eight hour work day; and push or pull an unlimited amount of weight. Dr. Heilpern reported that the claimant could occasionally climb stairs, stoop, kneel, crouch, and crawl but never balance.  (R. 182).

On January 6, 2011, the claimant told his chiropractor, Dr. Sargeant, that his pain was a one on a zero out of ten scale. The claimant consistently reported improved symptoms with increased walking ability and decreased use of pain medication from January 2011 until March 2011. However, on March 28, 2011 the patient reported his pain score to be at ten on a zero to ten scale. The chiropractor consistently reported that the claimant was progressing as expected from January 2011 until his last reported visit in March of 2011.  (R. 279-285).

On January 19, 2011, the claimant sought treatment from Dr. Jess Youngblood and requested a prescription for a walking cane and to "take him out of work." Dr. Youngblood prescribed the claimant Lortab and Naproxen and ordered that he stop working as a plumber or painter, and that he could not lay tile. (R. 296).

On July 13, 2011, the claimant told Dr. Youngblood that his pain was well-controlled on medication, claiming his pain to be a two or three on a zero to ten scale while on medication, but a seven without medication. (R. 289).

On September 12, 2011, the claimant reported his pain to be a three on a zero to ten scale and said that he was sleeping well and that his pain was controlled enough to take care of basic

chores. (R. 287). The claimant's reported pain remained at a two or three on a zero to ten scale from January 2012 through April of 2012. (R. 298-302).

Dr. Youngblood ordered an MRI on July 7, 2012. The results of this MRI showed a mild disc bulge without significant narrowing of the spinal canal or nerve root impingement at L4/L5 and L5/S1.  (R. 304).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ on August 27, 2012. (R. 13). At the hearing, the claimant testified that his pain resulted from a disc bulge on his sciatic nerve.  He stated that the pain was located in his lower back; that the pain radiated down his left leg into his foot; that he could not walk; and that he had to lay in bed for nine months.

The claimant testified that pain medication was able to dull the pain, but that he was unable to do plumbing work or go outside. He stated that he received some relief from decompression administered by a chiropractor, but that the pain was still present. The claimant testified that he was able to sit for fifteen to twenty minutes in a straight chair; stand for ten minutes without pain; walk approximately half a city block; and lift the weight of a gallon of milk. The claimant testified that he was unable to put socks on without help; only slept roughly four hours a night; and, out of an eight hour day, had to spend six hours lying down. The claimant reported being unable to drive and stated that he had not driven in a year because of pain when pressing the brake or clutch. The claimant said that he required help from family members or his fiancé in caring for his children. When asked how he came to use a cane, the claimant testified that his mother told him he needed a cane, and that he then requested that Dr.

Youngblood prescribe a cane to him. (R. 32-41).

A vocational expert, Joel Mann, testified concerning the type and availability of jobs that the claimant was able to perform. The ALJ asked Dr. Mann to assume a person of the claimant's age, education, and work experience who was capable of sedentary work, with the following limitations: lifting up to ten pounds occasionally; standing and walking for up to two hours; sitting for up to six hours out of an eight hour day; occasionally climbing ramps or stairs, but never ladders, ropes, or scaffolds; occasionally balancing with a handheld assistive device, stooping, kneeling, crouching, or crawling; and avoiding all exposure to operate moving machinery, as well as any exposure to hazardous machinery and unprotected heights. Dr. Mann testified that, under those assumptions, an individual would be able to fulfill the requirements of a hand assembler with 100,000 jobs nationally and 2,000 jobs in Alabama; a polisher with 2,000 jobs in the national economy and 100 jobs in Alabama; and an inspector with 50,000 jobs in the national economy and 500 jobs in Alabama. Dr. Mann testified that the three jobs that he listed were examples and that more than 500,000 other sedentary jobs existed in the U.S. economy that would meet such an individual's limitations.

Dr. Mann testified that a limitation of walking and standing for three hours a day would not change his answer regarding the type or number of available jobs. Dr. Mann stated that a person requiring three additional fifteen minute breaks during a work day would be unable to sustain employment. (R. 44-46).

### The ALJ's Decision

On October 9, 2012, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. (R. 22). First, the ALJ determined that the claimant did meet the

insured status requirement. Next, the ALJ found that the claimant had not engaged in substantial

gainful activity since the alleged onset of his disability. Third, the ALJ found that the claimant's

lumbar degenerative disc disease at L5-S1 qualified as a severe impairment. However, the ALJ

concluded that the claimant's medically determined mental impairment of depression was non-

severe because it caused no more than mild limitations in any of the broad functional areas. (R.

16).

The ALJ determined that the claimant's degenerative disc disease did not meet or equal

the severity of one of the listed impairments because his degenerative disc disease did not result

in a  compromise of the nerve root or the spinal chord. Next, the ALJ found that claimant had the

residual functional capacity to perform sedentary work, meaning that he could stand and/or walk

up to three hours at a time; occasionally climb ramps and stairs, but never ladders, ropes, or

scaffolds; occasionally balance with a handheld assistive device; occasionally stoop, kneel,

crouch and crawl; and he should avoid all exposure to operation and control of moving

machinery, as well as any exposure to hazardous machinery and unprotected heights. (R. 17).

In reaching this conclusion, the ALJ applied the pain standard and found that the

claimant's impairments could be expected to cause the alleged symptoms. However, the ALJ

found that the claimant's statements regarding the intensity of the symptoms were inconsistent

with the objective medical evidence.  (R. 17-18). The ALJ noted that 1) Dr. Sargeant reported

improvement in the claimant's condition and noted that his improvement was consistent with

expectations; 2) the claimant reported his pain to be a two or three out of ten while on medication

when seeing Dr. Youngblood; 3) Dr. Youngblood stated that the claimant's pain was controlled

well enough for him to get around and do basic chores; and 4) the most recent MRI showed mild

disc bulging without narrowing of the spinal canal or nerve root impingement. (R. 19-20).

The ALJ noted Dr. Heilpern's statement in the residual functional capacity assessment that the claimant's condition was "stable and that he is capable of being out and about and performing chores." The ALJ pointed out that, in reaching his conclusion, Dr. Heilpern considered the objective medical evidence and the claimant's reporting of symptoms and limitations. The ALJ found Dr. Heilpern's opinion to be internally consistent and consistent with the evidence as a whole and, therefore, gave it great weight. Based on the opinion of Dr. Heilpern, as well as the course of treatment and the treatment records, the ALJ determined that the claimant was capable of greater sustained capacity than described by the claimant.

The ALJ determined that the claimant was unable to perform any past relevant work because the exertional level of the claimant's past relevant work exceeded that of the claimant's residual functional capacity. The ALJ then determined that claimant was a younger individual with at least a high school education and that transferability of job skills was not material to the determination of disability. (R. 20-21).

The ALJ found jobs existed  in significant numbers in the national economy that the claimant could perform. In reaching this conclusion, the ALJ considered the claimant's "functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines." Based on the expert testimony of the vocational expert, the ALJ determined that, considering the factors mentioned above, the claimant was capable of adjusting to work that existed in significant numbers in the national economy such as a hand assembler, a polisher, or an inspector. Finally, the ALJ found that the claimant was not under a disability as defined in the Social Security Act from July 15, 2010 through October 9, 2012. (R. 21-22).

## VI. DISCUSSION

The claimant argues that the ALJ improperly applied the Eleventh Circuit's pain standard. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The pain standard applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1219, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the pain standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown*, 921 F.2d at 1236. Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the court accept the testimony as true. *Id*.

In this case, the ALJ conceded that the claimant suffers from an underlying medical condition capable of generating pain; however, he found that the entirety of the medical evidence failed to support the claimant's alleged severity of pain. The ALJ explicitly articulated his reasons for discrediting the claimant's alleged severity of pain.

First, the ALJ stated that, immediately following the claimant's car accident on March 7,

12

2010, the claimant did not have signs of spine tenderness or deformity. Next, the ALJ found that the claimant told Dr. Thomas Calvert on December 7, 2010 that he was not receiving any relief from the chiropractor. However, the ALJ noted the claimant's lack of acute distress or obvious pain at the time, as reported by Dr. Calvert. The ALJ found that, despite the claimant's statements, on December 3, 2010, Dr. Tim Sargeant, noted improvements in the claimant's pain. The ALJ stated that, on December 8, 2010, Dr. Sargeant reported that the claimant's response to care was favorable. The ALJ also noted in his reasoning that, despite reporting that he was not receiving any relief from the chiropractic treatment, the claimant received fifteen more decompressions in the following months. (R. 19).

The ALJ stated that, in July of 2011, the claimant reported that his pain was down to a two or three on a zero to ten scale when on medication. The ALJ mentioned that, in September of 2011, Dr. Youngblood  reported that the claimant's pain was controlled well enough for him to get out and around and to take care of basic chores. The ALJ also pointed out that, from September to December in 2011, the claimant reported sleeping well and rated his pain as a two or three out of ten while on pain medication. The ALJ noted the most recent medical records and MRI results showing that the claimant's spinal chord is normal and that his pain is well controlled as support for his finding that the claimant's pain was not a severe as he reported. (R. 19-20).

Based on the explicit findings of the ALJ, this court concludes that he properly applied the Eleventh Circuit's pain standard and that substantial evidence supports his decision. Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is

supported by substantial evidence and is to be AFFIRMED.

A separate order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 17th day of February, 2015.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE